## Lewis *vs.* Staples *&* al.

A debtor resident in the county of *Waldo,* being committed to the gaol in the county of *Hancock* while it was the prison for *Waldo,* under *Stat.* 1827, *ch.* 354, establishing the latter county, gave bond in common form, for obtaining the debtor's liberties, and returned to his home. The prison in *Waldo* was subsequently completed, and accepted by the Court of Sessions, and the prison limits restricted to the county lines. After this, the debtor went out of the limits of *Waldo,* to the gaol in *Hancock,* for the purpose of taking the poor debtor's oath, which was there administered.

And it was held that he was not bound to take notice of the doings of the Court of Sessions in accepting the gaol, &c. no public notice thereof having been given;—and that the bond was not broken.

This was an action of debt on a goal-bond; and came before the Court upon a case stated, in substance as follows:

The debtor who dwelt in *Prospect,* in the county of *Waldo,* was committed *Nov.* 21, 1829, in execution, to the gaol in *Castine,* in the county of *Hancock,* it being constituted the prison for *Waldo,* by *Stat.* 1827, *ch.* 354, for five years, if required, until a gaol should be erected in the latter county; and for this enlargement he gave the bond declared on, which was in the usual form, and returned to his home in *Prospect.* On the 24th of the same *November* the gaol in *Waldo,* being finished, was accepted by the Court of Sessions, as the public prison for the county. And on the 16th day of *March* following, the debtor, having previously given notice of his intention to the creditor, in due form of law, went to *Castine,* in the county of *Hancock,* and there took the poor debtor's oath and re-

ceived his certificate in legal form.    After the lapse of nine months and three days from the date of the bond, the debtor not having surrendered himself to prison, this action was commenced.

*W. G. Crosby,* for the plaintiff, submitted a written argument, in which he contended that the debtor was bound to conform himself to the prison limits as they existed for the time being, under such modifications as might from time to time be legally made.    And upon this principle he was bound either to have remained within the limits of the county of *Hancock,* or to have continued within those of *Waldo,* taking the oath before Justices of the latter county.    *Stat.* 1828, *ch.* 410, *sec.* 1 ; *Stat.* 1827, *ch.* 354 ; *Reed v. Fullum,* 2 *Pick.* 158.    The gaol in *Waldo* was the only place to which he could properly have surrendered himself in discharge of his bond.

*Johnson,* for the defendant.

The opinion of the Court was read in the following *September* term in *York,* as drawn up by

MELLEN C. J.    The decision of this cause depends upon the construction to be given to the act establishing the county of *Waldo,* passed *February* 7, 1827, and an additional act for the relief of poor debtors, passed *February* 26, 1828.    The county of *Waldo* was formed out of certain portions of the counties of *Hancock, Lincoln* and *Kennebec.*    The fourth section of the act first mentioned provides for the disposition of actions and processes pending in the courts in the three several counties of *Hancock, Lincoln* and *Kennebec ;* designating such as should be tried in the respective counties where pending, and such as should be transferred from thence to the dockets of the respective courts in the county of *Waldo.*    The tenth section declares "that all officers within and for the county of *Waldo,* having authority to commit any prisoner or debtor to goal, shall be authorized and required, for the term of five years from and after the passing of this act, if so long required by the county of *Waldo,* to commit such prisoner or debtor to the goal in the counties of *Hancock, Lincoln* or *Kennebec,* respectively, in the same manner as like officers in the respective counties last aforesaid, were by law

authorized and required to do before the passing of this act; and the keepers thereof are hereby authorized and required to receive and detain in their custody all such prisoners and debtors; and all persons so committed to goal in either of the counties of *Hancock, Lincoln* or *Kennebec,* from the county of *Waldo,* shall be entitled to the same rights and privileges as though they lived or had their homes in the county where committed as aforesaid; and it is hereby required and made the duty of all magistrates and civil officers of the counties of *Hancock, Lincoln* and *Kennebec,* respectively, to do and perform all acts and duties relating to such prisoners and debtors, as they are authorized and required by law to do and perform for other prisoners or debtors, arrested or committed within their respective counties." The first section of the last mentioned act is in these words: " That from and after the first day of *June* next, the limits of each respective county in this State, shall be, remain and become the boundaries of the gaol yard to each and every gaol within such county. Provided, that until a gaol be erected and ready to be occupied in the county of *Waldo,* the limits of the gaol yards in the several counties of *Hancock, Lincoln* and *Kennebec,* so far as regards debtors belonging to the county of *Waldo,* be extended so far as to include the territory within said county of *Waldo.*" Thus, by the act of *February* 26, 1828, the limits of the gaol yard in the county of *Hancock* on the first day of *June* of that year included, and until the 24th of *November* 1829, continued to include all the territory in the county of *Waldo.* On the 21st day of *Nov.* 1829, *Staples,* the debtor, was committed to the gaol in *Hancock* county. This was a lawful commitment. On the same day he was liberated from prison by giving the bond on which the action is founded; in virtue of which bond he was immediately at liberty to go at large in any part of the counties of *Hancock* and *Waldo,* at least during that and the two following days. The question is, what were the rights and liabilities of the debtor, after the 24th of *November,* and the declaration of the Court of Sessions of the county of *Waldo* as to the erection of the gaol in that county, and its readiness to be occupied, according to the acts above quoted and the condition of the bond declared on. We must ascertain as well as we can the

meaning of the legislature as expressed in the foregoing provisions. When the debtor was committed to gaol, he was lawfully entitled to his liberty, within the limits of the gaol yard, as then established, including *Hancock* and *Waldo ;* of course, the bond which he gave was a lawful one as to the terms of its condition ; and it was a part of the condition that he should surrender himself to the gaol keeper and go into close confinement, as required by law ; but, according to the 21st section of *ch.* 209, a debtor, having been admitted to the liberty of the gaol yard by giving bond as before mentioned, is not obliged to surrender himself to the gaol keeper, if within the nine months after being admitted to his liberty he has been discharged according to law. Within such nine months was he discharged according to law ? It appears that within that period, viz: on the 16th of *March* 1830, he was admitted to take the poor debtor's oath at the prison in *Castine ;* which oath must have been administered by justices of the peace in and for the county of *Hancock.* If he had not been admitted to his oath, to what gaol must he have been committed or to what gaol keeper should he have surrendered himself? The condition of his bond, lawful when given, required him to surrender himself to the keeper of the gaol in *Castine.* If he had so surrendered himself, would it not have been the duty of the keeper of that prison to receive and detain him ? The 10th section of the act incorporating the county, expressly says that such keepers are " required to receive and detain in their custody all such prisoners and debtors"—that is, all persons belonging to the county of *Waldo.* There is no provision in the act for the removal of such prisoners from the gaol in *Hancock* to the gaol in *Waldo ;* and it would seem that such a removal was never intended ; for had it been, some mode would have been prescribed ; and in case of surrender some provision would have been made to protect innocent debtors and their sureties from incurring a forfeiture of the penalty of their bonds. In addition to this, there appears to be an intelligible expression of legislative meaning in the language of that part of the 10th section, which requires and makes it the duty of all magistrates and civil officers in the county of *Hancock* to do and per-

form all acts and duties relating to debtors, belonging to *Waldo*, but committed to *Hancock* gaol, as they are required to do and perform for other debtors committed to the *Hancock* prison. According to this plain language, what authority could two justices of the peace in and for the county of *Waldo* have to administer the poor debtor's oath to *Staples* ? They surely could not go and administer it in the gaol at *Castine*, supposing *Staples* had never given bond ; they could do no official act out of their own county ; and *Staples*, being within the liberties of the prison, could not after *November* 24th, go into the county of *Waldo*, and, with knowledge that the gaol in that county had been declared by the Court of Sessions to be ready to be occupied, apply to two justices in that county to administer the oath to him, without violating the condition of his bond. Could the legislature have intended, that in order to avail himself of the privilege of gaining his liberty, he must either violate his bond and thus subject himself and his surety to a severe penalty, or the officiating magistrates must violate their duty and transcend their jurisdiction ? Looking at the several provisions of the act incorporating the county of *Waldo*, and especially the tenth section, we are all of opinion that the only reasonable and safe construction of it is, that all persons belonging to *Waldo*, who were committed to the gaol in *Hancock*, in virtue of the provision for that purpose, in that section, must be considered as having been to all intents and purposes as much the prisoners of the keeper in *Hancock*, while in close confinement ; and, while enjoying the liberties of the gaol yard in *Hancock* county, their duties, rights and liabilities were the same as though in both situations, they had been inhabitants of that county ; with the single exception, that from *June* 1, 1828, to *November* 24th, 1829, they enjoyed more extensive liberty, inasmuch as they might travel or reside in any part of the county of *Waldo*, as well as *Hancock*, without violating the condition of their bonds. This opinion, therefore, settles one, and the principal question of construction, arising merely on the face of the acts themselves, and unconnected with the particular facts, presented in the statement of the parties.

23

The only question remaining is, whether the residence of *Staples*, the debtor, at his home in *Prospect*, within the limits of the county of *Waldo*, after the 24th day of *November*, for a length of time, as the parties have expressed it, and prior to his discharge, in consequence of his having been permitted to take the poor debtor's oath, amounted to a breach of the condition of his bond.   By virtue of a public law, which was in full force when the bond was given, he knew that his immediate return to his home and residence there, was lawful ; and, if by a subsequent public law, of which all persons are bound to take notice, the limits of the gaol yard in the county of *Hancock* had been restricted, so as not to include any part of the county of *Waldo*, the residence of *Staples* in the town of *Prospect* would have amounted to a violation of the bond.   Such was the case of *Reed v. Fullum*, cited from 2 *Pick.* 158.   But, no man was bound to take notice of the acts or declarations of the Court of Sessions in relation to the readiness of the *Waldo* gaol for occupation.   There is no evidence or intimation that the debtor had any notice of this declaration of the Court of Sessions, even when he took the poor debtor's oath.   It is true, as a general principle of law, " that if a covenant be to do an act, upon the performance of an act by a stranger, there needs no notice ; because it lies equally in the knowledge of the obligor and obligee, and the obligor takes upon himself to do it ; as if a condition be to pay when A. marries ; there needs no notice when A. marries." 3 *Com. Dig.* 106, 107, *L.* 9.   But we apprehend this principle of law cannot properly be applicable in such a case as the present.   *Staples* had no means of knowing when the gaol in *Waldo* would be accepted and declared to be in readiness, and the *Hancock* gaol yard limits, in consequence, restricted to *Hancock* county, unless public notice had been given by the Court of Sessions a reasonable time before hand, that on the 24th of *November*, 1829, the gaol would be completed and ready to be occupied ; but nothing of that kind appears to have been done. While *Staples* was lawfully residing at his home in *Waldo* county on the day above mentioned, the Court of Sessions pronounced the gaol ready to receive prisoners ; and, according to the principle on which the counsel for the plaintiff contends the action to be maintainable,

the debtor, before he was, or could be aware of it, had committed an escape, though he did not know his duty, till it was too late to comply with it, nor his danger, until it was too late for him to make his escape. Considering the novel and peculiar provisions, in both acts, so far as they relate to *Waldo* county debtors, committed to *Hancock* gaol, we are of opinion that *Staples* cannot be adjudged to have violated the condition of his bond, as he had no knowledge that the territory of *Waldo* county had ceased to be a part of the gaol yard of the county of *Hancock,* as it was established to be by the act of *February* 26th, 1828.

We cannot persuade ourselves that the legislature, actuated as they must have been by liberal and humane feelings towards unfortunate debtors, could ever have intended that the legal provisions which we have been considering, should by a strict construction, be converted into snares for entrapping the innocent and unsuspecting, and thus defeating the purposes of justice.

*Plaintiff nonsuit.*